1          IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

2                      FOURTH JUDICIAL DISTRICT

3    STATE OF ALASKA,                    )
                                         )
4                    Plaintiff,          )
                                         )
5          vs.                           )
                                         )
6    JOHN WALSH,                         )
                                         )
7                    Defendant.          )
     _____ )

8

9    No. 4FA-S03-03446 CR

10                          VOLUME I

11                 TRANSCRIPT OF PROCEEDINGS

12            December 4, 2003 - Pages 2 through 5

13            December 8, 2003 - Pages 6 through 129

14           December 9, 2003 - Pages 130 through 287

15           December 10, 2003 - Pages 288 through 336

16           December 11, 2003 - Pages 337 through 341

17              March 15, 2004 - Pages 342-376

18

19
                             DISCLAIMER
20
           Transcripts Prepared for the Alaska Court System
21
     The Alaska Court System has accepted this transcript based on either review
     of a random sample or without review because the transcriber's prior work
22   has consistently met court system standards.

23   Because it is possible that this transcript may contain some errors, the
     court system encourages parties to listen to the tapes of critical portions
     of the proceedings and to bring any significant errors to the ACS
24   Transcript Coordinator's attention immediately.

25

A/V▾ TRONICS, INC.
E-Reporting and E-Transcription
Phoenix, AZ (602) 263-0885
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-1   Filed 02/24/12   Page 1 of 32   Attachment A

# TABLE OF CONTENTS

CALENDAR CALL:                                    Page 2

TRIAL BY JURY (EXCERPT):                           Page 6

JURY SELECTION:                                    Page 10

OPENING STATEMENT BY MR. SEEKINS:                  Page 116

OPENING STATEMENT BY MR. SPIERS:                   Page 123

| | VOL | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|---|
| WITNESSES FOR PLAINTIFF: | | | | | |
| Jason C. Griffin | I | 141 | 151 | 155 | 157 |
| Harry Smith | I | 159 | 163 | | |
| Edward Stern | I | 165 | | | |
| Melissa Gerber | I | 170 | 178 | | |
| Bryan Gerber | I | 182 | 194 | 200 | |
| Shannon McCoslin | I | 202 | 209 | 212 | 212 |
| Jesse Desare McKenzie | I | 213 | 218 | | |
| Robert B. Sawyer, Jr. | I | 219 | | | |
| Marlyn D. Kirkvold | I | 224 | | | |
| Anthony Allegood | I | 229 | | | |
| Rachel Foster | I | 233 | 263 | 265 | |
| Maurizio Salinas | I | 268 | 270 | | |

WITNESSES FOR DEFENDANT:

None

CLOSING ARGUMENT BY MR. SEEKINS                    Page 291

CLOSING ARGUMENT BY MR. SPIERS                     Page 306

REBUTTAL ARGUMENT BY MR. SEEKINS                   Page 320

JURY VERDICT                                       Page 338

SENTENCING

ARGUMENT BY MR. SEEKINS                            Page 346

i

1    we'll be close enough you can let her go.

2        MR. SEEKINS:  Okay.

3        THE COURT:  Yes.  May I continue?

4        (End of bench conference)

5        UNIDENTIFIED JUROR:  Your Honor, may I ask a question?

6        THE COURT:  Yes, sir.

7        UNIDENTIFIED JUROR:

8     Got a little anxiety about my Thursday excusal.

9        THE COURT:  I'm not going to make you miss it, okay?

10       UNIDENTIFIED JUROR:  Yeah.

11       THE COURT:  Where was I?  To assist you in your task, I'd

12   like to summarize for you the way in which the trial will be

13   conducted.  After you've heard the evidence, I'll tell you the

14   law that you need to know to decide the case.

15   12:49:25

16       (Court reads preliminary jury instructions)

17   1:08:17

18       THE COURT:  Before openings, I need to just raise one

19   very, very quick matter in the anteroom with counsel and with

20   Mr. Walsh.

21       (Anteroom conference as follows)

22       THE COURT:  Mr. Walsh, before opening statements I need to

23   tell you, you have the right to testify in this case.  You have

24   the right not to testify, and most importantly you have the

25   right to decide whether you'll testify or not.  It's not the

A/V▾ TRONICS, INC.
E-Reporting and E-Transcription
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 80-1   Filed 02/24/12   Page 3 of 32   Attachment A

1   decision of the lawyer.  Although a lawyer may have an opinion
 2   or give you advice, it's your right and your decision.  I want
 3   to make sure you understand that, and I'll remind you of it
 4   later, okay?
 5         MR. WALSH:  All right.
 6         THE COURT:  Okay, thank you.
 7         (End of anteroom conference)
 8         THE COURT:  Mr. Seekins, you may give an opening.  I
 9   remind counsel that openings are statements of what the
10   evidence will show or we expect to show and is not argument.
11   You may proceed, Mr. Seekins.
12         MR. SEEKINS:  Thank you for all being here.  Thank you for
13   your time.  I'm going to try and be as direct as I can.
14   There's a lot of witnesses there.  I'm going to try and move
15   things through in a pretty expedious [sic] manner and try not
16   to waste any of your time as much as I can.
17         We expect that you'll see most of those witnesses there.
18   Just right off the bat, one thing to tell you, Officer Pearl
19   Turney, found out today she's on leave, so you're probably --
20   you're not going to hear from her.  But you will hear from the
21   other officers there; Trooper Salinas and Trooper Foster.
22         Right off the bat, I'm just going to kind of tell you the
23   story here and keep it mostly chronological.  I'll skip around
24   a little bit as needed.  You're going to hear about a vehicle
25   theft initially.  That's one of the first things that happens

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
1760 East River Road, Suite 1885
Tucson, AZ (520) 661-3553

```
 1   chronologically in this case is you're going to hear that a
 2   vehicle was taken.  The vehicle was a Home Depot vehicle.  It
 3   was a -- kind of a moving van looking type thing with the big
 4   box sides on it.  It said Home Depot on the side of that truck
 5   clearly.
 6        You'll hear testimony from three of the people up there
 7   regarding that vehicle; Anthony Allegood, Robert Sawyer and
 8   Marilyn Kirkvold.  You'll hear testimony from these three
 9   people.  Anthony Allegood, Home Depot manager that was on duty
10   at the time, and you'll hear from him saying that no one gave
11   permission for the defendant to use that vehicle, that he
12   didn't have any right or any reason to believe he had a right
13   to use it.
14        You'll also hear testimony from Robert Sawyer and Marilyn
15   Kirkvold.  They both work for Trail Boss, Incorporated.  Trail
16   Boss leases these vehicles and leases the driver to Home Depot.
17   So Robert Sawyer is one of the supervisors at Trail Boss,
18   Incorporated.  He'll tell you also defendant had no right to
19   use this vehicle, had no reason to think he had a right to use
20   this vehicle.
21        He'll also tell you about Marilyn Kirkvold.  Marilyn
22   Kirkvold will also tell you -- or Marlyn, excuse me, Kirkvold
23   will also tell you himself that he was the driver.  He's
24   employed by Trail Boss, leased as the driver to Home Depot.
25   And he'll tell you how he accidentally left the keys in the
```

**A/V TRONICS, INC.**
E-Reporting and E-Transcription
Phoenix (602) 264-0885
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 100-2   Filed 02/24/12   Page 5 of 32   Attachment A

1   vehicle, and he did that a couple -- a day or two beforehand.

2   And you'll hear that no deliveries were made, that he wasn't

3   planning on using the vehicle.

4      He'll also state, didn't tell the defendant he could use

5   it. Nobody told the defendant he could use it. You'll hear

6   that testimony, and you'll here that essentially what happened

7   there was that the defendant came by. There's only one

8   conclusion left. The keys are in it. The defendant came by,

9   found the keys in it and took off with the car.

10      That sounds at first like a very bizarre behavior. It

11   sounds like an odd thing to take a big moving van and take it

12   somewhere. Well, you're going to hear a lot about bizarre

13   behavior. You're going to hear a lot about unusual things. As

14   you hear about those unusual things and that bizarre behavior,

15   that's going to link in with some of these other charges,

16   specifically the DUI and refusal. It's going to link in

17   together with those, because a lot of this behavior you're

18   going to say why was he acting like this; what does this

19   indicate. And what it indicates is that he was influenced by

20   alcohol at the time of these actions throughout this time.

21      You all heard the commentary we went through in the

22   questioning earlier today on how you don't necessarily need a

23   breath test to find someone guilty of DUI, to find that

24   somebody was being influenced by alcohol at the time they

25   drove. And you'll be able to see that in this case. You'll be

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
7227 N. 16th Street, Suite 252
Tucson, AZ (520) 661-3553

1  able to see by the behavior, by the odor of alcohol that was

2  noticed by people, by the wobbling, by various other behavior,

3  that clearly the defendant in this case was under the influence

4  of alcohol at the time he drove that vehicle.

5      There won't be a breath test.  You won't have that number

6  to say where was he on the scale, but you will have that

7  behavior, and that's good enough to do it.  You won't have a

8  breath test, because you'll hear about how the defendant in

9  this case refused to give a breath sample, and that's a

10 separate charge now.  So we're linking to that third charge

11 now, linking into the refusal.

12     You'll find that when he got to the station that he

13 refused to give a sample of his breath, even though he was

14 provided the time, the chance, the machine was ready, the

15 warning was given as appropriately should have been.  You'll

16 hear all that stuff, and you'll be able to conclude from the

17 evidence that he refused, that he's guilty of refusal.

18     So far you'll be able to find from those three things that

19 he is guilty of vehicle theft, DUI and refusal.  His story will

20 continue to go along.  I direct you back to the board there.

21 You'll see Jason Griffin listed up at the top.  You'll hear

22 about Jason Griffin being struck by this Home Depot truck as he

23 was driving around town.  You'll hear that he did witness who

24 the driver was.  You'll hear that later he went to Fred Meyer

25 and identified the driver.  You'll hear how his vehicle was

A/V TRONICS, INC.
E-Reporting and E-Transcription
1-800-CourtToday (1-800-268-8832)
Tucson, AZ (520) 661-3553

1  sideswiped along the whole side, the whole left side of the

2  vehicle there, just scratched right along the whole thing and

3  how the vehicle just kept on going, running red lights, driving

4  unusually.

5       You'll hear from Harry Smith who saw this sideswiping take

6  place, the next person on the list there.  Further, you'll hear

7  from Ed Stern.  Ed Stern, you'll just hear a little bit from

8  him.  He doesn't have a whole lot to tell you other than his

9  vehicle was one of the many that were damaged in the Fred Meyer

10  parking lot as the defendant drove through the parking lot

11  hitting several different cars in different locations and

12  finally parking forcefully between two cars in a way that

13  essentially scooted the one car to the side a little bit as he

14  pushed up against it.  You'll hear that he then got out of the

15  driver's side and slammed his door, having not quite enough

16  room, slammed his door into the car on the other side.

17       You'll hear from Melissa Gerber and Bryan Gerber, who own

18  that vehicle that was pushed over on the one side, who own that

19  Ford Explorer.  You'll hear from them how they heard the

20  crunching of the metal and looked around and saw the driver

21  getting out of the vehicle, how Melissa Gerber called 911 on

22  her cell phone as Bryan Gerber followed the defendant as he got

23  out of the vehicle, followed him for a ways further.

24       Now those two things that you've heard there, him walking

25  away from those wrecks at Fred Meyer, him driving away and

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
1-800-853-1885
Tucson, AZ (520) 661-3553

1  driving through the red lights on the roads on the way to Fred
2  Meyer, and from those you'll be able to reasonably conclude
3  from that evidence that the defendant is guilty of leaving the
4  scene of an accident, in fact, leaving the scene of an accident
5  more than one time.  You'll be able to easily conclude that.
6  You'll be able to easily say that the damage he did to that
7  car, there's no way he couldn't have known he did that.  He
8  knew it, and he drove off.  He left the scene of the accident.
9        Further you're going to hear a little bit more about as he
10 walks through the store, and Bryan Gerber -- Bryan Gerber's
11 following him along, the name right under Bryan Gerber, Shannon
12 McCoslin, because as Bryan Gerber follows the defendant into
13 Fred Meyer, you'll hear about how Bryan Gerber notified the
14 store security, and they sent Shannon McCoslin, the loss
15 prevention individual from the store, to help follow.
16       As Brian and Shannon followed him through the store as he
17 went through and picked up various items and eventually took
18 all of these items and left the store with them, passed the
19 clerk stations, passed everyone, and just decided to basically
20 take them and go; take the stuff and leave the store.
21       Sounds unusual, sounds kind of bizarre.  Again, an
22 indication that he was being influenced by alcohol, and that
23 will relate in with these other charges.
24       You'll also hear from Jesse McKenzie, the next name on
25 that list.  Jesse McKenzie was one of the clerks working at

A/V▾ TRONICS, INC.
E-Reporting and E-Transcription
1-800-518-0885
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-1   Filed 02/24/12   Page 9 of 32   Attachment A

1  Fred Meyer.  Jesse and Shannon and Brian all came out to try

2  and detain him, detain the defendant, and tell him, you know,

3  you've just stolen these goods, you've hit cars, you're

4  obviously under the influence of alcohol driving around.

5      You'll hear that the defendant didn't respond to that,

6  didn't say, okay, you know, I'll wait for the cops.  He tried

7  to keep leaving and eventually you'll hear that Trooper Foster

8  showed up on the scene and that Trooper Foster attempted to

9  stop the defendant, and the defendant still would not stop,

10  wouldn't listen to reason, and instead she had to take him down

11  to the ground.

12      You'll hear how Trooper Rachel Foster had to take him down

13  to the ground and struggle with him and how he resisted arrest.

14  That's that next chart, along the line.  You just heard a

15  little bit too about the concealment, how he concealed the

16  goods in the store and tried to steal those items.

17      But you'll hear how he resisted arrest, and you'll hear

18  how he struggled with the officers and eventually was arrested

19  successfully.

20      And further you'll hear that this driving, this last

21  charge to link in, is driving while license suspended.  You'll

22  hear that his license, his driver's license was actually

23  suspended at the time of this incident, that he wasn't even

24  allowed to be driving in the first place.

25      All of these things will come together, and you'll hear

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
(800) 2x8-0885
Tucson, AZ (520) 661-3553

1    from some of the other officers who assisted Trooper Foster in
2    the case.  It's possible you may even hear from that last name
3    on the upper right hand side depending on time and how it goes.
4    It's Danielle Simmons, Assistant District Attorney in the
5    office that I work in, who also witnessed part of this
6    accident.  We might or might not get to her depending on time
7    and how much she's needed in other areas at the office.  But
8    without her you'll have more, more than enough, to find the
9    defendant guilty of all these charges, more than enough
10   evidence from all the testimony, from all the damage.  You'll
11   be able to easily find that the defendant was guilty beyond a
12   reasonable doubt of all these charges.  But if need be or if
13   time provides, we can bring her in and have her testify
14   additionally as well to seeing the accident in the Fred Meyer
15   parking lot.  Thank you.
16       THE COURT:  Thank you, Mr. Seekins.  Mr. Spiers, you would
17   like to give an opening at this time?
18       MR. SPIERS:  I would.  On September the 13th, which I
19   believe was a Saturday about 6:00 o'clock in the afternoon, my
20   client, Mr. John Walsh was over at Fred Meyers West, and he was
21   stealing food.  He was stealing pizzas.  He was taking donuts
22   and chewing up the donuts and putting half of them back, and he
23   stole a chicken.  And he went outside, and he was caught and he
24   was taken down to the ground.
25       About the same time somebody had stolen a truck, a Home

**A/V TRONICS, INC.**
E-Reporting and E-Transcription
2230 N. Country Club #9-085
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60   Filed 02/24/12   Page 11 of 32   Attachment A

1     Depot truck, and they had driven it to the Fred Meyers West

2     parking lot. The driver or perhaps more than one person got

3     out of the vehicle, and they fled into Fred Meyers.

4         What you folks are going to have to decide, and the real

5     issue in the case is, is the guy who was stealing the chicken

6     and the pizza and eating donuts and who was caught outside and

7     struggled with the police officers, is it the same person who

8     took and drove the Home Depot truck?

9         And so this case is about a question of identity.

10     There'll be many witnesses that will come forward, and they

11     will tell you different stories; that there was two people in

12     the truck, that there was one person in the truck, that it was

13     a white person that was driving, that the white person had long

14     hair.

15         What you're going to have to decide is, again, is the

16     person or persons that fled into Home Depot [sic] the same

17     person as my client; the same guy who was arrested for stealing

18     food in Fred Meyers.

19         I can't predict how each witness will testify, but I do

20     know that each witness has given different stories about that.

21     The last witness on the list, Danielle Simmons, came forward

22     very recently. She works with the DA, and while I know what

23     she might say, it's an odd fact that she was identified

24     recently, and Mr. Walsh is going to ask you to take that into

25     consideration in judging her testimony.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
7227 N. 16th Street, Suite 10885
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-1   Filed 02/24/12   Page 12 of 32   Attachment A

```
 1        I hope you pay close attention to what people say and talk

 2   about and what they saw, and if the state is able to show that

 3   the person that stole the Home Depot truck is the same person

 4   who was stealing the food, then the state is right, and Mr. --

 5   you'll find Mr. Walsh guilty of all counts.

 6        If the state is not able to show that, then you will be

 7   convicting Mr. Walsh of shoplifting, and if the evidence

 8   warrants, possibly resisting arrest.  Thank you, Your Honor.

 9        THE COURT:  Thank you, Mr. Spiers.

10        And due to the time, Mr. Seekins, did you excuse the

11   witness?

12        MR. SEEKINS:  Yes.

13        THE COURT:  Well, ladies and gentlemen, we'll quit eight

14   minutes early today, start with the first witness tomorrow

15   morning.  Please be on time.  Please try to accommodate for the

16   cold weather, should we have a snap or snow or anything like

17   that.  Those of you that -- well, people are different.  I know

18   with my younger daughter, if I want her somewhere at 8:30, I

19   tell her we're starting at 7:00, you know, so whatever it

20   takes, I'll appreciate you being on time tomorrow, giving us

21   the knock on the door.

22        Yeah, and you can check out the jury room if you haven't

23   been in there on your way out and leave that way.  You're free

24   to leave today any way you want.

25        Miss Washburn?
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
7227 N. 16th Street, Suite 240-088
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-4   Filed 02/24/12   Page 13 of 32   Attachment A

1          PANELIST WASHBURN:  A question a few of us had.  You

2     mentioned that it would be probably a three-day trial, and the

3     last day we wouldn't stop at 1:30; we'd go into jury del -- is

4     that going to be Wednesday, do you think?  I know you can't

5     guarantee us anything but.....

6          THE COURT:  That's what we expect.  That is what we

7     expect.

8          PANELIST WASHBURN:  Okay.

9          THE COURT:  And you're right.  We can't predict, but I do

10    my best to hold us to our expectations.  Parking passes.  Come

11    and get them if you're going to need them after today, if you

12    need them tomorrow morning.   The clerk and I will try to

13    remember each day to give you them.  And the final thing I have

14    to say is don't discuss the case, don't let anyone discuss the

15    case with you, don't express or formulate any opinions, no

16    investigations, experiments or research out of the courtroom.

17    And jury duty may be a drag, but that's the best jury room in

18    the whole building.  It is.  I hope you enjoy it.  Yes, sir?

19         UNIDENTIFIED JUROR:  Can I get a clarification?  Do we

20    have to separate these out individually, these charges?

21         THE COURT:  Each charge will be decided, and I'll tell you

22    that at the end of the case.  Each charge has to be decided

23    independently, and there'll have to be a unanimous verdict as

24    to each charge.  Jury could find to have different answers on

25    different charges.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
(602) 263-0885
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-2   Filed 02/24/12   Page 14 of 32      Attachment A

1      The final thing I'm going to tell you now, because I have

2  a moment; I'll do it by heart.  Some jurors like to take notes.

3  Some jurors prefer not to take notes.  If you want, here's what

4  we're going to do.

5      Tomorrow morning when you arrive, you will each find a

6  notepad and pen on your chair.  The number on that notepad will

7  correspond with the chair you're in so that you'll know you get

8  the same one back each time, and we'll know who to give it to.

9      If you choose to take notes, every time there's a recess,

10  we will collect those notes, and they will be held securely

11  during the recess and given back to you when you come into

12  court.  When deliberations come, you may take your notes with

13  you.

14      Two cautionary thoughts are in order on the subject of

15  notes.  Number one, and I know this from personal knowledge;

16  note taking can interfere with your ability to pay attention.

17  Countlessly I'll be writing something down, whether it was

18  something I've heard during court proceedings because of, you

19  know, and then I realize I missed something that was said.  So

20  don't let note taking interfere with your ability to hear and

21  receive all the evidence.

22      The next thing is when you get to deliberations, sometimes

23  there's a subconscious perception on some people's part that a

24  recorded note, someone's recorded memory in the form of a note,

25  is somehow more valid, weighty or accurate than another

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Tucson, AZ (520) 661-3553

1    person's recollection.  That's not necessarily the case.  One

2    juror's note is not necessarily any better than another juror's

3    memory.

4         Tomorrow I will hand those out.  If you want to hold onto

5    them during the trial, you're free to use them.  If you know

6    you don't want to use them, tell me not to bother you, and I'll

7    take it back and you won't get them again.

8         I think that's all.  I thank you for attendance this

9    morning and your attention.  You are excused.  We will begin at

10   8:30 tomorrow morning.

11        Counsel, if there's anything that has to be taken up

12   beforehand, we'll start as early as possible, but I will not

13   hear it when the jury's ready to come in.  I'm listed in the

14   phone book; call me if we need to start early.

15        MR. SPIERS:  Your Honor, we already know we would like to

16   start at 8:15.  Mr. Seekins brought two matters to my

17   attention.  If the court has to.....

18        THE COURT:  Not them?  We will start at 8:15?

19        MR. SPIERS:  Just us, yes, Your Honor.

20        THE COURT:  All right, we'll be ready for you at 8:10.

21   That's our business so that we don't keep you waiting.  You're

22   on at 8:30.  Thank you.  Good day.

23        If anyone has any trouble with comfort, with parking, with

24   keeping the car warm, with plug ins or anything other than at

25   home, let me know.

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
6760 N. Oracle-0885
Tucson, AZ (520) 661-3553



1       (Off record)

2   1:28:15

3                    END OF REQUESTED PORTION

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

129

Case 4:10-cv-00022-RRB   Document 60-2   Filed 02/24/12   Page 17 of 32   Attachment A

1

2

3

4

5

6

7

8

9

10

11

12                          TRIAL BY JURY, CONTINUED (EXCERPT)

13                     BEFORE THE HONORABLE RICHARD SAVELL
                              Superior Court Judge

14

15                                        Fairbanks, Alaska
                                          December 9, 2003
16                                        8:19 o'clock a.m.

17

   APPEARANCES:
18

          FOR THE PLAINTIFF:
19

                                        Benjamin Seekins
20                                      Assistant District Attorney
                                        455 Third Avenue, Suite 150
21                                      Fairbanks, Alaska 99701

22

          FOR THE DEFENDANT:
23

                                        William A. Spiers
24                                      Assistant Public Defender
                                        529 Fifth Avenue, Suite 1
25                                      Fairbanks, Alaska 99701

Case 4:10-cv-00022-RRB   Document 60-1885   Filed 02/24/12   Page 18 of 32   Attachment A

```
 1
 2                    P R O C E E D I N G S
 3     4FA-4403-107
 4     8:19:40
 5         THE COURT:  We're on the record in State v. Walsh.
 6     Counsel and the defendant are present.  The jury's absent, and
 7     the attorneys wanted to raise things.  Mr. Seekins.
 8         MR. SEEKINS:  Yes.  First of all, we had a notice of
 9     intent to impeach filed, and if the defendant testifies in this
10     case, we intend to impeach him with his prior conviction for I
11     believe it's theft.
12         THE COURT:  You're on notice, and there was no objection
13     filed.  Is there anything new to add, Mr. Spiers?
14         MR. WALSH:  Your Honor, I need to speak for a minute.
15         THE COURT:  One moment, sir.  Yes, Mr. Spiers.
16         MR. SPIERS:  No, I've had notice, and not only that, Your
17     Honor, I've -- during my opening statement I admitted that he
18     was stealing food.  It would be hard for me at this point to
19     object to an introduction of another theft.
20         MR. WALSH:  Your Honor, I.....
21         THE COURT:  Well, we're going to have crimes of
22     dishonesty.  I'm not going to specify if there's any
23     similarity.  If, for example, I believe the cases say that we
24     may tell the jury that it's a crime of dishonesty.  If this is
25     a charge of theft, I'm not going to allow them to hear that the
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
1-800-CO 248-0883
Tucson, AZ (520) 661-3553

```
 1    other one was a theft, because it's not propensity; it goes to
 2    credibility.

 3         Yes, Mr. Walsh.

 4         MR. WALSH:  Your Honor, I need a mistrial declared in this
 5    case.

 6         THE COURT:  Turn the microph -- wait a minute.  Go ahead,
 7    turn the microphone towards you.

 8         MR. WALSH:  I need a mistrial declared in this case for
 9    the following reasons.  Mr. Spiers projected guilt to the jury
10    without prior consent when he told them I was shoplifting,
11    which is false.  He has never discussed any trial strategy with
12    me.  The alleged witness, Danielle Simmons that was added to
13    the state's witness list without argument from a lawyer is, to
14    my knowledge, not common practice.  I also have never seen Mrs.
15    Simmons' name as a witness in the case in either the grand jury
16    tapes, police reports, or I didn't get anything else.

17         All due process was denied, constitutional rights
18    trampled.  Furthermore, there's been a conflict of interest
19    with Mr. Spiers and myself from the beginning stemming from a
20    prior case.  He has filed no motions on my behalf for
21    suppression, evidentiary, conflict or anything as I suggested
22    throughout my case, but rather has dismissed me as a jailhouse
23    lawyer.

24         I have never received all discovery or exculpatory
25    evidence in my case as requested to my knowledge.  Mr. Spiers
```

132

```
 1   has only seen me twice for 15 minutes and threatened me with
 2   six to 13 years if I didn't take his plea deal.
 3        THE COURT:  Anything else?
 4        MR. WALSH:  That's all I can think of for now.
 5        THE COURT:  All right.
 6        MR. WALSH:  Thank you.
 7        THE COURT:  You've got a lawyer here.  Lawyers make
 8   motions to the extent.....
 9        MR. WALSH:  He's a District Attorney.  It wouldn't hurt my
10   feelings if he sat over there at the other table.
11        THE COURT:  Mr. Walsh, I didn't interrupt you.
12        MR. WALSH:  I'm sorry.
13        THE COURT:  You don't interrupt me, please.
14        MR. WALSH:  I'm sorry.
15        THE COURT:  All right.  You have a lawyer in this case.
16   There are certain decisions that are entrusted to lawyers under
17   the law.  The lawyers make tactical and strategic decisions
18   during a trial, and there are certain decisions that are only
19   the defendant's.
20        If and when you continue to have a complaint about Mr.
21   Spiers' performance, that will be examined at another time and
22   in another place.  To the extent I'm allowing or honoring or
23   having to respond to your request for a mistrial, it is denied.
24   I could explain all of the reasons in answer to all of your
25   complaints but do not feel this is the right time or place, nor
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-1   Filed 02/24/12   Page 21 of 32   Attachment A

```
1    am I compelled to.
2        Now, Mr. Seekins, you wanted to raise something about
3    priors, and that concerned me.....
4        MR. SEEKINS:  Yes.
5        THE COURT:  .....and I want to hear that.
6        MR. SEEKINS:  Basically he had a prior DUI in 2002, and I
7    want to raise that in my direct to -- I'd like to be able to
8    admit his prior to the jury to demonstrate that he had
9    knowledge of the operator's license revocation.
10       THE COURT:  Well, you can establish he had knowledge of
11   the revocation without showing he had a DUI.  If you have --
12   first off, you're talking about if he testifies.
13       MR. SEEKINS:  Actually, I'd like to do that regardless.
14   I'd like to.....
15       THE COURT:  Well, the problem is knowledge you may
16   establish, but a prior DUI slops over into propensity for the
17   same reason that we are cautioned to bifurcate, for example, in
18   felony DUIs.
19       MR. SEEKINS:  Right.
20       THE COURT:  So when someone's license is suspended or
21   revoked, how are they notified?
22       MR. SEEKINS:  By -- well, he was notified in court at his
23   change of plea.
24       THE COURT:  Okay, are there any other things that come
25   from.....
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-43   Filed 02/24/12   Page 22 of 32   Attachment A

1    MR. SEEKINS: Sometimes DMV sends something out, but it's

2    virtually impossible to get DMV to work with you to get the --

3    to get their mailing.

4        THE COURT: You want me to take that literally; you can

5    not get from DMV.....

6        MR. SEEKINS: Not -- it's not impossible; it's just to do

7    it between the time when we thought the change of plea was

8    going and now, or to do it between the time the crime was done

9    and trial is usually.....

10       THE COURT: You may.....

11       MR. SEEKINS: .....not time productive.

12       THE COURT: You may establish through him, if you wish, to

13   ask him whether he was in Court on such and such a date and

14   whether, in fact, the judge told him, should he testify, that

15   it was dismissed -- that his licensed was suspended before the

16   fact of a prior conviction for DWI. You can refer to a case

17   involving use of an automobile, or you can talk about a lot of

18   things. Unless he, through his denials, leaves you no

19   alternative, you must still apply to the court.

20       MR. SEEKINS: Okay.

21       THE COURT: And you may not introduce priors without

22   permission of the court. If necessary, the judgment can come

23   in. If necessary, the judgment may come in with redactions.

24   Of course, if and when you tender any of this, I'll hear from

25   Mr. Spiers, but right now there's a bar on introduction of

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-2 088   Filed 02/24/12   Page 23 of 32   Attachment A

1    priors.

2        MR. SEEKINS:  Okay.  And then if he does -- if he does

3    testify then on the separate area of the refusal, if he

4    testifies to any knowledge or any lack of knowledge about the

5    refusal and connected to that that he didn't actually intend to

6    refuse, then I'd like to bring in all four or five of his

7    priors, be able to question him on those prior DUIs.

8        THE COURT:  Did he refuse in those cases?

9        MR. SEEKINS:  Let me double check.

10        THE COURT:  See I don't know what the defense is.  I don't

11    know if it was an inadequate advisement, I don't know if it was

12    a confusing refusal, and I don't want to deal in conjecture.

13        MR. SEEKINS:  Right.

14        THE COURT:  But the law requires the contemporaneous

15    giving of the warning.  Should he say it was given but he

16    didn't understand it, you may establish that he was -- a

17    juror's coming through.

18        Go to the jury room for now.  No, jurors.  You can go

19    through there, sir.

20        MR. SEEKINS:  Right now it looks like there are DUIs

21    actually, but I don't have the case -- or at least they were

22    pled as DUIs.

23        THE COURT:  Right, well, if he, for example, testifies

24    yeah, he said those words but I misunderstood it or I didn't,

25    you know -- it is possible that his responses may open the door

Case 4:10-cv-00022-RRB   Document 69   Filed 02/24/12   Page 24 of 32   Attachment A

```
 1   for you saying, weren't you given the same advice on blankety-
 2   blank date.
 3        MR. SEEKINS:  Okay.
 4        THE COURT:  You don't have to say, when you were arrested
 5   for DUI, didn't the police advise you on this date, on this
 6   date, on this date.  But whenever we get into that area, you
 7   better approach the Court.
 8        MR. SEEKINS:  Okay.
 9        THE COURT:  And then I'll hear from Mr. Spiers.  It's
10   conjectural now, and there's a bar until situations warrant.
11   Anything else?
12        MR. SEEKINS:  No.
13        THE COURT:  Mr. Spiers, anything?
14        MR. SPIERS:   If Mr. Seekins intends to bring out that Mr.
15   Walsh didn't talk to a police officer, I'd ask the Court to
16   issue a cautionary instruction that he doesn't need to.  Mr.
17   Seekins raised the issue, I think, in opening statement
18   yesterday, and I wouldn't ask for a mistrial on that basis, but
19   what I would ask is, number one, that his non-responsiveness to
20   a police officer's questions.....
21        THE COURT:  I don't recall anything alerting me to that
22   during opening, but give me a hypothetical on how it might come
23   out in testimony, Mr. Spiers?
24        MR. SPIERS:  Your Honor, I.....
25        THE COURT:  When did -- what happened?
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
7227 N. 16th Street, Suite 250-0885
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-1   Filed 02/24/12   Page 25 of 32   Attachment A

1      MR. SEEKINS:  I think what I said was that -- I think it
2  was about him basically walking off when they tried to stop
3  him.
4      THE COURT:  I didn't -- but assuming.....
5      MR. SEEKINS:  I don't recall.
6      MR. SPIERS:  Your Honor.....
7      THE COURT:  If it comes up I certainly will jump right up
8  and tell the jury that he has no obligation to say anything.
9      MR. SPIERS:  Yes, Your Honor.
10     THE COURT:  Okay.
11     MR. SPIERS:  Thank you.
12     THE COURT:  All right, anything else?
13     MR. SPIERS:  Nothing from the defense, Your Honor.
14     THE COURT:  All right.  Is it true that -- it is true.  I
15 still have no elements instructions from the state, and I've
16 crafted my own.  Am I mistaken and you submitted some?
17     MR. SEEKINS:  I drafted -- I had them draft some up, but I
18 understood that you had some done.  I had them drafted up just
19 as a backup in case anything.....
20     MR. SPIERS:  And I had review.....
21     MR. SEEKINS:  .....fell through.
22     MR. SPIERS:  I had reviewed them, and if the state were to
23 submit those it would be without my objection.
24     THE COURT:  Well, don't leave them to spring on me.  Even
25 though they were late, it's worse to wait, make them later.

138

```
 1        MR. SEEKINS:  Don't know if I have them in my bag right
 2   now.  I'll double check.
 3        THE COURT:  That gives me the opportunity to compare.  As
 4   I'm sure you're aware, some of these offenses rarely enter this
 5   court.  It's not like.....
 6        MR. SEEKINS:  Yeah, the DUI ones I had.....
 7        THE COURT:  .....the ones that I do every day.
 8        MR. SEEKINS:  The DUI ones I had, I'd like to briefly go
 9   over one more time.  I found a few errors in them.
10        THE COURT:  All right.  That I have, but I -- even though
11   they're late, I want to see what you say.
12        MR. SEEKINS:  Okay.
13        THE COURT:  All right.
14        MR. SEEKINS:  I'll get them together for you.
15        MR. WALSH:  Your Honor.....
16        THE COURT:  Not right now.
17        MR. WALSH:  .....may I have one more?
18        THE COURT:  Yes, Mr. Walsh?
19        MR. WALSH:  Because I know some of the people in the
20   community that are on the jury I would like Mr. Walsh -- I
21   mean, Mr. Spiers, to recant his statement of yesterday.  Some
22   of them I have to deal with in the community.
23        THE COURT:  I don't know what the evidence is all going to
24   be yet and.....
25        MR. WALSH:  I just don't want him up there saying that I
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
602-263-0885
Tucson, AZ (520) 661-3553

```
1    was stealing out at Fred Meyers.  I mean, he's supposed to be
2    defending that charge, not prosecuting the charge.
3         THE COURT:  Well, actually, he's -- what he was doing,
4    which is a tactical decision is.....
5         MR. WALSH:  I understand that, but we have not discussed
6    this defense.....
7         THE COURT:  You interrupted me again, Mr. Walsh.
8         MR. WALSH:  I'm sorry.
9         THE COURT:  I think we'll end this conversation now, then.
10        MR. WALSH:  All right.
11        THE COURT:  If you don't want to hear my answers to what
12   you say, I will not force you to listen to them.  Let's take a
13   count and check on our jurors.  Go off the record, please.
14        (Off record)
15        (On record - jury present)
16        THE COURT:  Good morning, ladies and gentlemen.  We're on
17   the record in State v. Walsh.  Counsel and the defendant are
18   present, and with you at counsel table, Mr. Seekins?
19        MR. SEEKINS:  This is Officer Rachel Foster.
20        THE COURT:  Very well.
21        MR. SEEKINS:  Or Trooper, excuse me.
22        THE COURT:  Call your first witness, please.
23        MR. SEEKINS:  The state calls Jason Griffin.
24        THE COURT:  Mr. Griffin.
25        MR. GRIFFIN:  Yes.
```

140

1      THE COURT: Why don't you step up here, please. You can

2   leave your jacket back there or bring it with you; whatever

3   makes you comfortable. Stay standing next to there, and the

4   clerk will administer an oath.

5      (Oath administered)

6      MR. GRIFFIN: I do.

7      THE CLERK: You may be seated.

8                          JASON C. GRIFFIN

9   called as a witness on behalf of the plaintiff, testified as

10  follows on:

11                       DIRECT EXAMINATION

12     THE CLERK: Sir, for the record, would you please state

13  your full name and spell your name?

14  A   Spell my full name?

15     THE CLERK: Please.

16  A   Jason Cole Griffin, and J-a-s-o-n C-o-l-E G-r-i-f-f-i-n.

17     THE CLERK: And your occupation.

18  A   I'm a hazardous waste technician for the Borough.

19     THE CLERK: And where's your residence?

20  A   Fairbanks.

21     THE COURT: Thank you, sir. Mr. Seekins.

22  BY MR. SEEKINS:

23  Q   Mr. Griffin -- hold on a second. On July 13th of 2003,

24      approximately 6:00 o'clock in the afternoon, somewhere

25      around there, do you recall having an incident, a traffic

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
602-313-0885
Tucson, AZ (520) 661-3553

```
 1        incident, of some sort?

 2   A    Yes, I do.

 3   Q    What do you recall that incident to be?

 4   A    Traffic accident, hit and run.

 5   Q    And approximately where were you at at the time of the hit

 6        and run?

 7   A    I was heading westbound, and I was sitting at the

 8        intersection of the Mitchell Expressway and Peger Road.

 9   Q    Okay.

10   A    For a red light.

11   Q    Did you say you were on Mitchell or you were on Peger?

12   A    I was on the Mitchell headed towards Ester.

13   Q    Headed towards Ester?

14   A    Uh-huh (affirmative).

15   Q    And which lane were you in?

16   A    I was in the fast lane, stopped at the red light.

17   Q    The left lane?

18   A    Yes.

19   Q    Can you go ahead and bring that piece of paper a little

20        closer and go ahead and draw the intersection for me?

21   A    Sure.

22        THE COURT:  There's a can of markers there, sir, and draw

23   so the members of the jury can see.  Thank you.

24   A    Let's see.  Mitchell comes in like this.  Peger Road comes

25        across.  There's the slow lane.  This is headed towards
```

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
Tucson, AZ (520) 661-3553

| | |
|---|---|
| 1 | Ester.  There's the fast lane, and right here is actually |
| 2 | a crosswalk.  And then there's a -- I believe there's one |
| 3 | left hand turn lane so you can get on the -- go down Peger |
| 4 | towards Carquest or Arctic Tire, and I was in the -- |
| 5 | sitting right here at the first person, and then there was |
| 6 | another vehicle right next to me in the slow lane, and |
| 7 | there was nobody in the left hand turn lane. |
| 8 | Q    Okay, and..... |
| 9 | THE COURT:  Do you want to continue to question him from |
| 10 | that chart? |
| 11 | MR. SEEKINS:  Just for a moment. |
| 12 | THE COURT:  If so, bring -- turn that one toward you, sir, |
| 13 | the microphone on the witness stand.  Just turn it toward where |
| 14 | you're standing.  And likewise, that one in front of the jury |
| 15 | box; bring that down so it will be on the other side of the |
| 16 | easel, and that way we'll make sure we get a good recording of |
| 17 | what you're saying. |
| 18 | A    Okay. |
| 19 | THE COURT:  I'm obligated to make sure that everything we |
| 20 | say is picked up by the microphone.  Sorry for the |
| 21 | inconvenience. |
| 22 | A    That's not a problem.  How's that? |
| 23 | THE COURT:  Great, thank you. |
| 24 | BY MR. SEEKINS: |
| 25 | Q    Was there anybody else in front of you at the |

**A/V▾ TRONICS, INC.**
E-Reporting and E-Transcription
1-800-XXX-0885
Tucson, AZ (520) 661-3553

Case 4:10-cv-00022-RRB   Document 60-1   Filed 02/24/12   Page 31 of 32   Attachment A

```
 1        intersection?

 2   A    No, I was the first one right there at the crosswalk.

 3   Q    So you were essentially the middle lane out of three lanes

 4        that existed there?

 5   A    That's correct.

 6   Q    And you said there was a car in the right hand lane?

 7   A    That's correct.  There was a Subaru next to me in the

 8        right hand lane.

 9   Q    Okay.  And you were stopped at a red light, I assume?

10   A    That's correct.

11   Q    And then what happened after that?

12   A    I was sitting there waiting for the light to turn green,

13        proceed, and I looked up in my rearview mirror, and there

14        was a box van that was swerving across all two lanes,

15        because it hadn't quite got into the beginning of the left

16        hand turn lane, and he was swerving back and forth between

17        the two lanes; the slow lane and my lane.

18   Q    And where did he eventually make contact with you?

19   A    He -- I was watching in my rearview mirror waiting for

20        the -- waiting for the impact.  He was going pretty quick.

21        He swerved across my lane and came around and sideswiped

22        my pickup.

23   Q    On which side?

24   A    On the driver's side.

25   Q    So he essentially kind of was almost in that left hand
```

144

Case 4:10-cv-00022-RRB   Document 60-1   Filed 02/24/12   Page 32 of 32   Attachment A